# UNITED STATES DISTRICT COURT
## OF THE
## WESTERN DISTRICT COURT OF NEW YORK



CHRISTOPHER BROWN

-V-

DIGITAL FORENSICS
CORPORATION

Case No:

23-CV-6566

**COMPLAINT FOR DAMAGES**

- $750,000,000

PRESIDING:

_____

Come now Christopher Brown moves this court for a judgement of no less than $750,000,000 against the defendant Digital Forensics Corporation for violations of several State and Federal Laws.  Matter to be heard before the Western District Court located at 100 State Street Rochester, NY 14614 on ____ day of _____, 2023 or soon thereafter.

Plaintiff brings forth lawsuit in pursuit of civil remedies due to defendant's intentional and deliberate violations of the law.  Through-out this complaint plaintiff will establish all the primitives of the defendants actions of which foliate a

1

general plot and twist of conspiratorial efforts to induce to contract under fraudulent misrepresentations, advertisements, and unjust enrichment by conversion of the plaintiff's funds; defendant's actions of coercion, deceit, and fraud which the plaintiff believes the defendant attempted to cover criminal activities; defendant's actions of which constitute consumer fraud and unfair business actions; defendant's actions of which attempts to place plaintiff under duress and then force plaintiff to sign contract of which to prevent plaintiff from asserting judicial proceedings for the intentional actions by the defendant.

Plaintiff seeks relief from the courts to not only punish defendants for such efforts; but to remedy the fraudulence of which the defendants have presented amongst other consumers.

Plaintiff's claims for relief will also establish grounds for the courts to enjoin and enforce provisions through judicial orders of which entails the proprieties to which the defendant's advertise and contract to enforce the provisions of the standard of business which prevents the defendants from further distorting and improperly converting consumer funds without delivery of such advertised or misrepresented business services.

1.    Plaintiff Christopher Brown is a resident of New York State within Monroe County.  The plaintiff has resided in Rochester, NY since approximately 2014.

2.    *Defendant "Digital Forensics" is a corporation of whom entails themselves with several business names.*  Defendants primary place of business is located within the State of Ohio who has primary address of 3401 Enterprise Parkway, Suite 340 Beachwood, Ohio 44122 and or 4400 Renaissance Parkway Warrensville Heights, OH, 44128.  Plaintiff is under the assumption that defendant owns and operates a digital forensics business who collects information and prevents computer crimes as represented by defendant's employees and through online advertisements.

3.  Jurisdiction is proper as to it district court has jurisdiction over all matters which violate Federal laws and statutes. Applicability of 28 U.S.C.A. 1332 as diversity of citizenship arises; plaintiff is resident of New York State and defendant has primary place of business located in the State of Ohio. Applicability of 28 U.S.C.A. 1332 arises as to it the amount in controversy exceeds $75,000 as to it plaintiff files lawsuit for relief of $750, 000, 000.

4.  Venue is proper pursuant to 28 U.S.C.A. 1391 as to it plaintiff resides in New

York State within the county of Monroe and plaintiff's property is situated in New

York State of which Western District Court holds venue.  Defendants have multiple

locations and sites of which the defendant's employees stated the defendant

conducts business in the New York market.


## Factual Background

### Fraudulent inducement to contract allegations


### Primary Contract

5.  Plaintiff approximately 2018 experienced such intrusion to computers and

network of internet service provider who at that time plaintiff was contracted

through Charter Communications Spectrum's Internet.


6.  Plaintiff experienced computer fraud and abuse through placement of social

security numbers, bank account information, cell phone numbers, known

whereabouts of family members, threats of such to kidnap or harm children and

other such information that led to theft and deformation of intellectual property and

customer information; as to it the unknown threat actor instituted such information

by placing information upon the internet through the misappropriated conduct on

the PlayStation and Microsoft services while plaintiff was playing video games. Plaintiff also received email from an male which originated from the African continent; of which the email stated "My mother is sick and needs help send can you send me some money", "Plaintiff responded with no I cannot help" plaintiff was under the impression this was a scam due to when plaintiff called the phone number provided that through background chatter the deponent seemed to be in a market of which they spoke with a British accent.

7. Plaintiff immediately sought out digital forensics services to capture such evidence of the threat actor. Through the internet service provider such search query produced a link to the defendant "Digital Forensics Corporation. Plaintiff initiated such contract through email and or the company's message portal.

8. Defendant's offered such services to the plaintiff as to procuring such digital evidence of which was stated could be used as evidence in a judicial proceeding. Plaintiff relied upon such representation as to it plaintiff wanted such evidence to enjoin the courts to prosecute the threat actor.

10. Defendant's employees through conversation offered such digital forensics services to the plaintiff of which the plaintiff was to pay approximately $800 for phase 1 and 2 of digital investigation.

11. Upon completion of phase 1 the plaintiff was to be entitled to a detailed report of the digital investigation as the defendant's employees represented the plaintiff during the inducement phase to contract the plaintiff.

12. Plaintiff asked for the production of phase 1 documentation of the digital forensics package that the defendant contracted plaintiff for and the defendant's employee stated to the plaintiff that in order for plaintiff to receive the documentation the plaintiff would have to initiate a deposit for another $2500 - $5000 for phase 2 of which phase 2 would contain a report of the evidence that the defendant captured through the digital forensics services performed on the plaintiff computer device of which was connected to the internet service provider.

13. Defendant's employees stated to the plaintiff that such production of documentation would be provided after the completion of phase 2, defendant deliberately misrepresented the service to the plaintiff and in attempt to coerce the

plaintiff to further unfair business practices by trying to further the plaintiff into another contract for phase 2 of services.

14. Plaintiff responded to defendants after realizing that defendant's have converting plaintiff's monetary value and not producing such services that he could not afford to be further induced in a fraudulent scam of irrational proportion.

## Second Contract

## Fraudulent Inducement to contract

15. Plaintiff's computer crimes continued, and plaintiff reached out to digital forensics to secure the advertised cellular services digital forensics due to what seemed to be a threat actor cloning the plaintiff's cellular phone approximately 2019.

16. Defendant's employees stated to the plaintiff that in fact the services which the defendant's provide are that of digital forensics services of cellular phones. Plaintiff described that plaintiff downloaded an application onto cellular phone and phone began to show ailments that more than one user was on the phone. Such

issues as to it someone typing in the cell phone as plaintiff was producing text messages.

17. Defendant's through verbal communication made promises to the plaintiff as to it being the services included a standard price for both phase 1 and phase 2. Defendant's employees stated that plaintiff needed to send in his device and the defendant would provide plaintiff with alternate device for defendant to produce digital evidence of which the plaintiff could use during the judicial proceeding.

18. Plaintiff waited for several months and contacted defendant on several occasions and defendant's employees gave several excuses to which the work was not completed.

19. Plaintiff understood that the necessity to produce such evidence and that the rules of the courts for such violations of computer fraud and abuse has a statutory limit to when plaintiff could bring forth claims against those of whom were committing such actions.

20. Plaintiff made the defendant aware of such deadlines and stated to the defendant that the need to produce the services as established were of a demand at

that time of.  Defendants failed to produce any documentation of the services that

the plaintiff sought to establish through the misrepresentations of the defendant.

21. Defendant's employees at this time began to mention to plaintiff of such

contractual documentation that the defendant established to the plaintiff of which

the plaintiff needed to sign to prevent the plaintiff from asserting claims against the

defendant through a judicial proceeding.  Legal Threat to prevent plaintiff from

asserting claims against defendant.

22.  Plaintiff refused to sign such documents and asked the defendant to send the

device and or devices back to the plaintiff and provide such documentation as

represented by the defendant's employees.

23.  Defendant's failed to provide such documentation to the plaintiff and

established such parameters as to it if the plaintiff needed documentation, then the

defendant's employees attempted to contract the plaintiff into more services by the

defendant.  Plaintiff refused services and politely asked for the documentation and

devices.

24. Defendant's thus sent devices and a document of which did not entail the digital forensics investigation performed on such devices.  The documents provided to the plaintiff were that of a receipt of purchase and device description. Upon arrival of Plaintiff's device, plaintiff could no longer access the device due to device possibly being reconfigured.

**Third Contract**

Cell Phone and Internet Remote Access and devices.

25.  Plaintiff knowing of the digital forensics investigative procedure that it takes many different angles to build the digital evidence to procure and establish a case against due to digital evidence laying in several areas of electronic devices. Through the digital adaptive process, one must access every device to establish a story of how the threat actor intruded and what evidence possibly the threat actor made it off with.

26.  A threat actor latched onto a victim and implants themselves and hides amongst the internal data of the devices during intrusion and while performing such hacking of devices there are digital footprints that the threat actor leaves

behind.  The digital forensics process is to establish the steps of which the threat actor took to gain access into devices and the damage of which the threat actor caused to the plaintiff.  Such a further explanation of why the plaintiff persisted with different services is not of adherence.  As to it plaintiff was inert to produce an established time-line due to the initial procedure by the defendant's halted the plaintiff from asserting claims in a judicial proceeding due to the vast amount of time in which the defendant took to perform such investigations and the non-production of the essential documentation needed to assert such a claim.

27.  Plaintiff contacted defendant's due to the on-going systematic intrusions into the plaintiff's devices through a shared internet service provider of whom the plaintiff initially contacted digital forensics corporation upon.

28.  Defendant's employees stated after inducing plaintiff to contract that the services which the defendant's provided at that time were different due to such services the defendant has discontinued from their digital forensics package.

29.  Defendant's employees induced plaintiff to contract under the same services as before of the digital apprehension of digital evidence.  Plaintiff was under the

impression of the defendant's employee that plaintiff would send in devices and

defendant would provide plaintiff with alternate devices.


30.  Plaintiff paid for services and was never contacted by defendant's employees

as plaintiff patiently waited for the mailing forms of which the defendant was to

provide to the plaintiff to send the devices to the defendant to perform such digital

forensics services.


31.  Plaintiff called into question the defendant's services and defendant's

employee stated that the service of which the plaintiff was contracted for was for

remote acquisition the plaintiff responded in fact that he ordered the same services

as which were to be performed in initial contract. Defendant's employee stated to

the plaintiff that such services was not any longer provided by the defendant due to

the Covid-19 protocols that the defendant's instituted to protect employees.


32.  Thus resulting in the services that plaintiff ordered to be changed and

defendants represent to the plaintiff of the remote service acquisition.  On the day

of remote acquisition, the defendant's employee was refusing to perform such

services as represented to the plaintiff; of those services the defendant's employees

were to perform a full mounting of the plaintiff's devices and perform a full

forensic digital copy of such devices to produce documentation of which would produce documentation that could be used in judicial proceedings.

33. During such remote acquisition the defendant's employees just accessed the plaintiff's cellular phone and showed the plaintiff applications and settings. The defendants never produced any documentation pertaining to the acquisition of the plaintiff's cellular phone.

34. Defendant's failed to remotely acquire the digital forensics evidence of the plaintiff's computer devices for purposes due to the fact that they did not adequately have the proper equipment to perform such acquisition of the computer device. Defendant's employees never explained to the plaintiff of the need for the internet to establish such services and plaintiff stated that the internet of which was in use was shared internet. This party deponent of whom plaintiff's government information was accessed through plaintiff is under the impression deliberately shut down the internet on such day or through the service provider in attempt to hinder, delay, or prevent such investigation from occurring. (Plaintiff later filed case in Supreme Court against Deponent). Plaintiff's devices still had the option of being acquired and mounted by the defendant employees due to the plaintiff cellular device and computer being able to establish connection through a hotspot

of which would have allowed for internet connection by the defendant's employees. Plaintiff can demonstrate acquirement of device through mobile hotspot internet connection.

35. Defendant's failed to produce documentation as stated for the services of which the plaintiff paid for through defendant's employees.

## Fourth Contract – Data Recovery

36. Plaintiff contacted defendant and asked for defendant to produce documentation of which the defendant failed to produce and prevented and halted the plaintiff from asserting claims in any judicial proceeding of the computer crimes of which the plaintiff was forced to endure.

37. During such conversation plaintiff mentions to the defendant's employees that apart of the contractual agreement that was represented to the plaintiff that such crimes would have been prevented and or halted. The defendant's employee had no response. The plaintiff stated to defendant if such were possible then why did the plaintiff just go through a data breach through hard-drive and cellular device.

38. Defendant's provide plaintiff with documentation of digital forensic investigation phase 1 of the original contract and no further documentation. The defendant's employee remains persistent in inducing the plaintiff to contract and states to the plaintiff that the defendant's offer a service for data recovery for the price of approximately $250.

39. Plaintiff due to the need of furtherance in a human rights investigation to provide information to lawyers of the evidence that was deleted during such breach the plaintiff contracted to have the data recovered.

40. Plaintiff makes payment to defendant and defendant's send over a carrier to pick up the hard drive.

41. The defendant's employer, through several conversations, stated to the plaintiff that upon retrieval of the hard drive that the hard drive was broken. Plaintiff asserts that the hard drive was in good working order prior to handing the hard drive to the carrier. Plaintiff wrapped the hard drive, in plastic bubble wrap and several layers of masking tape. Plaintiff is under the impression that defendants in order to cover up criminal evidence they broke the hard drive.

42. Defendant then further attempted to induce the plaintiff by stating well in order for us to establish a full recovery that we need to send the hard-drive to the lab and asked plaintiff for approximately $800 more dollars. Plaintiff stated to the defendant that he was not going to spend more money on the defendant's services and that plaintiff was coming to Ohio to pick up the devices to prevent such further damage to plaintiff's devices.

43. Defendant's employee became frightened at this point and stated to the plaintiff that there was no need to come to the defendant's place of business and threatened the plaintiff with legal proceedings.

44. Plaintiff hung up the phone and booked a train ticket for Ohio. Plaintiff arrived in Maumee, Ohio approximately 10 miles from the defendant's place of business and through phone conversation on several attempts the defendant's stated to the plaintiff to not come to the defendant's business as to it defendant's lab was a top-secret place of privacy and plaintiff had not obtained the necessary credentials to access.

45. Defendant's employees during such ascertained to the plaintiff that there was a dire need for the plaintiff to sign documentation which stated that the plaintiff would not seek any judicial proceedings against the defendant's corporation "First File Recovery".

46. Plaintiff stated that he would just like to have all of his money back for the nonperformance and multitude of contracts that the defendant's contracted upon the plaintiff and failed to perform such contractual obligations.

47. Defendant's state to the plaintiff that they would in fact refund the plaintiff of the funds in which the plaintiff paid for such services only upon the completion of signing such legal documents of which halts the plaintiff's rights to bring forth claims against the defendant. Defendant's never produces such return of the monetary property plaintiff attributed to the defendants.

48. Nothing Else Follows

# FIRST CAUSE OF ACTION – BREACH OF CONTRACT

49. Plaintiff affirms and alleges the following as stated in paragraphs 1-48 below in this section of the complaint.

49. Plaintiff establishes several contracts for services through defendant's "Digital Forensics Corporation". Such contracts were to establish the production of digital evidence due to computer crimes which the plaintiff endured.

50. Defendant's duty to provide such contractual obligations and services as the plaintiff paid for.

51. Defendant's breach contract by not providing the output the contractual obligations.

52. Plaintiff is damaged by monetary damages due to the defendant's failure to produce such services and documentation as the defendant's employees contracted through the plaintiff.

53. Plaintiff is harmed and damaged due to the defendant's willful and intentional actions through fraud, deceit, unfair business practices, conspiracy to alter destroy, prevent, alter, plaintiff evidence and to not provide contractual obligations.

54. Wherefore plaintiff is entitled to relief due to defendant's breach of contract of the following:

(i)    Compensatory Damages

(ii)    Punitive Damages or Exemplary Damages

(iii)    Consequential Damages and or Special Damages

(iv)    Future Damages

(iv)    Costs and fees

(vi)    Together with any other relief the courts may deem necessary through the proceedings regarding this matter.

# SECOND CAUSE OF ACTION – VIOLATIONS OF UNIFORM COMMERCIAL CODE – 2 – 313 – EXPRESS WARRANTY

55. Plaintiff affirms and alleges the following as stated in paragraphs 1-48 below in this section of the complaint.

56. Defendants make several misrepresentations and affirmations of the services of which they provide to the plaintiff after the signing of the contract. 2-313 of the Uniform Commercial Code states that in fact such affirmations and or promises to the representations of services at the point of sale is the creation of an express warranty between the seller and buyer of such services.

57. Plaintiff relied on such representations, affirmation and or promises by the defendants to contract as they were engorged on an onslaught by the defendant to sell the services to the plaintiff; defendant's preyed on the plaintiff as plaintiff was in need of such services and failed to ensure such promises and or affirmations of the service was provided to the plaintiff.

58. Plaintiff is harmed monetarily and emotionally due to such affirmations presented by the defendant during the inducement to contract the plaintiff.

59. Wherefore the plaintiff is entitled to relief of the defendant's malicious, intentional, willful, conduct of negligent misrepresentations, affirmations, and or promises which were used to induce the plaintiff to contract.

60. Plaintiff is entitled to the following relief:

   (i)  All relief that the courts find through the proceedings of this matter

Plaintiff relied on such representations to contract the defendant's services.

# THIRD CAUSE OF ACTION – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT TITLE 18 U.S.C.A. SEC. 1030 (a)(7)

61. Plaintiff affirms and alleges the following as stated in paragraphs 1-48 below in this section of the complaint.

62. Plaintiff restates such allegations are of truth as stated in paragraphs 36 – 48 as incorporated throughout the complaint below.

63. Plaintiff affirms that such hard drive of which the defendant's offered services to perform recovery of data upon were that of in working condition the day of which the plaintiff placed package into the defendant's carrier's hands; plaintiff transferred information from alternate hard drives onto the hard-drive that morning.

64. Plaintiff affirms that defendants are responsible for any and all damages of which pertain to the hard – drive upon such device leaving the plaintiff's hands and being placed in transit to the defendant's place of business.  As to it plaintiff requested from the defendant a ticket to place such devices into a shipment through Fed-Ex as initiated in prior contracts.  Devices of previous contracts seemed to work just fine upon arrival of defendant's business and only needed passwords to open and secure information from.  Thus supports the plaintiff's module of transportation.

65. Defendant's upon stating of receiving such hard drive to perform data recovery digital forensics work on such device stated after a few days the device was broken.

66. Defendants sales employees state that the data is still retrievable, yet they must initiate micro-processing to establish image and then defragmentation to piece together such information gathered during the digital carving of such hard drive disc.

67. Defendants attempt to extort the plaintiff for more money by in the form of offering additional contractual services and expedited services to the plaintiff. Plaintiff stated he paid approximately $250 for the data recovery services and that's final. Defendants become irate and state that the device is in the lab, and it takes months to complete such digital data carve out until after the authorization of the time of which plaintiff's evidence was needed.

    (i)    Plaintiff can prove such data - recovery procedures take maximum of 2 to 3 business days.

    (ii)    taking apart hard – drive 30 minutes

    (iii)   placing disc from hard – drive onto mirror imaging system – 10 mins

    (iv)   Copying such disc few hours

    (v)   Repacking materials and providing copy to consumer – priceless

68. Defendant's are in violation of Title 18 U.S.C.A. Section 1030 (a)(7)(c) by altering and or damaging the plaintiff's hard drive then requesting additional funds from the plaintiff; plaintiff is harmed damaged by the defendant's actions and defendants shall be fined and punished under the 18 U.S.C.A. 1030(c)(3)(a) as the courts see fit.

69. Plaintiff is entitled to relief as stated in the title and any other relief the courts may deem necessary.

# FOURTH CAUSE OF ACTION – VIOLATION OF 18 U.S.C.A. 1512 (C)(1), (c)(2).  TAMPERING AND PREVENTING OF JUDICIAL PROCEEDINGS

70. Plaintiff affirms and alleges the following as stated in paragraphs 1-48 below in this section of the complaint.

71. Plaintiff restates such allegations are of truth as stated in paragraphs 36 – 48 as incorporated throughout the complaint below in furtherance of the action below.

72. Defendant intentionally, corruptly and willfully alters, destroys, the plaintiff's hard – drive with direct intention to impair the integrity of the plaintiff's device and then attempts to request more money from the plaintiff to assist plaintiff in judicial proceedings by doing as such prevent the plaintiff from asserting the production of evidence into several judicial proceedings of which constitutes a violation of federal law pursuant to 18 U.S.C.A. Sec. 1512(c)(1).

73. Defendants influence the outcome of several proceedings in fact of which the plaintiff contracted to services of which would produce full copies of data on the devices as stated and promised by defendant's employees of which is a violation of 18 U.S.C.A. Sec. 1512(c)(2) of which prevented the plaintiff from engaging and participating in such proceedings or the investigations leading to such proceedings.

74. The plaintiff is harmed and damaged by the defendants intentional, willful, corruptive actions of which constitute fraud, conspiracy, unfair deceptive business practices, and extortion.

75. Plaintiff is entitled to the proper relief as stated in 18 U.S.C. Sec. 1512 of which through the proceedings the presiding will ascertain.

## **Conclusion**

Plaintiff contacted defendant under the impression that defendant was of a reputable business of whom handled digital forensics for computer related crimes. Defendants presented themselves as an organization of such. Through the unfair dealing and treatment by the defendant's employees of fraudulent inducement to contract by fraudulently misrepresenting goods and services, unfair business practices which methods were to drain the plaintiff of as much money as the defendants possible could, conspiracy to destroy alter and or prevent plaintiff from asserting information into judicial proceedings; and a multitude of several other cause of actions the plaintiff has been monetary harmed by such actions of the defendant's.

The plaintiff requests relief from the courts for the defendant's violations of the law. Such relief to make the plaintiff whole as to before the defendant's engaged in such activities; such relief as to punish the defendant; such relief as to any harm the plaintiff may endure in the future, and such relief to ensure that the defendants never practice this unordinary style of conducting business with the New York market or any market within the jurisdiction of the laws of which protect the United States of America.

This complaint established a broad definitive outline of the laws of which the defendant's have broken on Federal level and plaintiff will move to amend complaint in the near future pursuant to Fed. R. C. P. Rule 15 to match the evidence obtained during the discovery phase of the judicial proceedings.

Respectfully submitted 30 Day of September 2023

Christopher Brown
3349 Monroe Ave Suite 106
Rochester, NY 14618
585-285-6579

Digital Forensics Corporation

_____

_____

_____

27

## UNITED STATES DISTRICT COURT
### OF THE
### WESTERN DISTRICT COURT OF NEW YORK

CHRISTOPHER BROWN

-V-                                          Case No: 23-CV-6566-EAW

DIGITAL FORENSICS
CORPORATION                                  AFFIDAVIT


PRESIDING:
_____


Plaintiff Christopher Brown writes this affidavit in support of the complaint against

defendants "Digital Forensics Corporation" with the intent at such statements are

the truth.  Plaintiff writes this affidavit and understands that such enthrallment of

perjury of fraudulent statements; that in fact plaintiff will be subject to judicial

redress for criminal activity.

I _Christopher Brown_ state that in fact this affidavit is in support of the

complaint attached in furtherance of the judicial proceedings of Christopher Brown

-v- Digital Forensics Corporation

1.     Plaintiff states that he is a resident of the State of New York with Physical address of 3349 Monroe Ave Suite 106 Rochester, NY 14618 .

2.     Plaintiff states that plaintiff contracted to services with defendant "Digital Forensics Corporation" from approximately 2018 through approximately 2021.

3.     Plaintiff states that the last known contract for good and services through defendant's corporation was approximately 2021 for data recovery services.

4.     Plaintiff states that defendant operates and functions primarily out of the state of Ohio and defendants contracted plaintiff to services and failed to provide the services and affirmations and or promises of which were used to induce plaintiff to contract.

5.     Plaintiff states that in fact defendant's committed such crimes as stated throughout the complaint and then attempted to force plaintiff to sign documentation of which would forbid plaintiff of the right to

seek judicial redress for the illegal conduct of business instituted by the defendant.

I _____ state that in fact this affidavit is in support of the complaint attached in furtherance of the judicial proceedings of Christopher Brown -v- Digital Forensics Corporation.

Respectfully submitted 30 day of September 2023

Christopher Brown

3349 Monroe Ave Suite 106

Rochester, NY 14618

585-285-6579

Digital Forensics Corporation

3401 Enterprise Parkway Suite 340

Beechwood, OHIO 44122

_____

_____

3

# Law

18 U.S.C. Sec. 1512

USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)  30 day of September 2023 Gov.Info
USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)


18 U.S.C. Sec. 1030

USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)  30 day of September 2023 Gov.Info
USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)

28 U.S.C. Sec. 1390

USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)  30 day of September 2023 Gov.Info
USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)


15 U.S.C. Sec. 1031

USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)  30 day of September 2023 Gov.Info
USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)

18 U.S.C. Sec 521

USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)  30 day of September 2023 Gov.Info
USCODE-2021-titleI8-partI-chap47-sec1030.pdf (govinfo.gov)

1

**Editorial Notes**

REFERENCES IN TEXT

Paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1986, referred to in subsec. (c), is classified to section 501(c)(3) of Title 26, Internal Revenue Code.

AMENDMENTS

1994—Subsec. (d). Pub. L. 103–322 substituted "fine under this title" for "fine of not more than $20,000".

1986—Subsec. (c). Pub. L. 99–514 substituted "Internal Revenue Code of 1986" for "Internal Revenue Code of 1954".

**Statutory Notes and Related Subsidiaries**

CONGRESSIONAL STATEMENT OF FINDINGS

Pub. L. 91–452, title VIII, §801, Oct. 15, 1970, 84 Stat. 936, provided that: "The Congress finds that illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof."

PRIORITY OF STATE LAWS

Pub. L. 91–452, title VIII, §811, Oct. 15, 1970, 84 Stat. 940, provided that: "No provision of this title [enacting this section and section 1955 of this title, amending section 2516 of this title, and enacting provisions set out as notes under this section and section 1955 of this title] indicates an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of a state or possession, or a political subdivision of a State or possession, on the same subject matter, or to relieve any person of any obligation imposed by any law of any State or possession, or political subdivision of a State or possession."

**§ 1512. Tampering with a witness, victim, or an informant**

(a)(1) Whoever kills or attempts to kill another person, with intent to—

(A) prevent the attendance or testimony of any person in an official proceeding;

(B) prevent the production of a record, document, or other object, in an official proceeding; or

(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to—

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; or

(C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(3) The punishment for an offense under this subsection is—

(A) in the case of a killing, the punishment provided in sections 1111 and 1112;

(B) in the case of—

(i) an attempt to murder; or

(ii) the use or attempted use of physical force against any person;

imprisonment for not more than 30 years; and

(C) in the case of the threat of use of physical force against any person, imprisonment for not more than 20 years.

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation[1] supervised release,[1] parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

(c) Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—

(1) attending or testifying in an official proceeding;

[1] So in original.

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation[1] supervised release,,[1] parole, or release pending judicial proceedings;

(3) arresting or seeking the arrest of another person in connection with a Federal offense; or

(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

(e) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

(f) For the purposes of this section—

(1) an official proceeding need not be pending or about to be instituted at the time of the offense; and

(2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance—

(1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or

(2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

(h) There is extraterritorial Federal jurisdiction over an offense under this section.

(i) A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

(j) If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(k) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(Added Pub. L. 97–291, §4(a), Oct. 12, 1982, 96 Stat. 1249; amended Pub. L. 99–646, §61, Nov. 10, 1986, 100 Stat. 3614; Pub. L. 100–690, title VII, §7029(a), (c), Nov. 18, 1988, 102 Stat. 4397, 4398; Pub. L. 101–650, title III, §321, Dec. 1, 1990, 104 Stat. 5117; Pub. L. 103–322, title VI, §60018, title XXXIII, §330016(1)(O), (U), Sept. 13, 1994, 108 Stat. 1975, 2148; Pub. L. 104–214, §1(2), Oct. 1, 1996, 110 Stat. 3017; Pub. L. 104–294, title VI, §604(b)(31), Oct. 11, 1996, 110 Stat. 3508; Pub. L. 107–204, title XI, §1102, July 30, 2002, 116 Stat. 807; Pub. L. 107–273, div. B, title III, §3001(a), (c)(1), Nov. 2, 2002, 116 Stat. 1803, 1804; Pub. L. 110–177, title II, §205, Jan. 7, 2008, 121 Stat. 2537.)

**Editorial Notes**

AMENDMENTS

2008—Subsec. (a)(3)(A). Pub. L. 110–177, §205(1)(A), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "in the case of murder (as defined in section 1111), the death penalty or imprisonment for life, and in the case of any other killing, the punishment provided in section 1112;".

Subsec. (a)(3)(B). Pub. L. 110–177, §205(1)(B), substituted "30 years" for "20 years" in concluding provisions.

Subsec. (a)(3)(C). Pub. L. 110–177, §205(1)(C), substituted "20 years" for "10 years".

Subsec. (b). Pub. L. 110–177, §205(2), substituted "20 years" for "ten years" in concluding provisions.

Subsec. (d). Pub. L. 110–177, §205(3), substituted "3 years" for "one year" in concluding provisions.

2002—Subsec. (a)(1). Pub. L. 107–273, §3001(a)(1)(A), substituted "as provided in paragraph (3)" for "as provided in paragraph (2)" in concluding provisions.

Subsec. (a)(2). Pub. L. 107–273, §3001(a)(1)(C), added par. (2). Former par. (2) redesignated (3).

Subsec. (a)(3). Pub. L. 107–273, §3001(a)(1)(B), (D), redesignated par. (2) as (3), added subpars. (B) and (C), and struck out former subpar. (B) which read as follows: "(B) in the case of an attempt, imprisonment for not more than twenty years."

Subsec. (b). Pub. L. 107–273, §3001(a)(2), struck out "or physical force" after "intimidation" in introductory provisions.

Subsec. (b)(3). Pub. L. 107–273, §3001(c)(1), inserted "supervised release," after "probation".

Subsec. (c). Pub. L. 107–204 added subsec. (c). Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 107–204 redesignated former subsec. (c) as (d). Former subsec. (d) redesignated (e).

Subsec. (d)(2). Pub. L. 107–273, §3001(c)(1), inserted "supervised release," after "probation".

Subsecs. (e) to (j). Pub. L. 107–204 redesignated former subsecs. (d) to (i) as (e) to (j), respectively.

Subsec. (k). Pub. L. 107–273, §3001(a)(3), added subsec. (k).

1996—Subsec. (a)(2)(A). Pub. L. 104–294 inserted "and" after semicolon at end.

Subsec. (i). Pub. L. 104–214 added subsec. (i).

1994—Subsec. (a)(2)(A). Pub. L. 103–322, §60018, amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "(A) in the case of a killing, the punishment provided in sections 1111 and 1112 of this title; and".

Subsec. (b). Pub. L. 103–322, §330016(1)(U), substituted "fined under this title" for "fined not more than $250,000" in concluding provisions.

Subsec. (c). Pub. L. 103–322, §330016(1)(O), substituted "fined under this title" for "fined not more than $25,000" in concluding provisions.

1988—Subsec. (b). Pub. L. 100–690, §7029(c), substituted "threatens, or corruptly persuades" for "or threatens".

Subsec. (h). Pub. L. 100–690, §7029(a), added subsec. (h).

1986—Subsec. (a). Pub. L. 99–646, §61(2), (3), added subsec. (a) and redesignated former subsec. (a) as (b).

Subsecs. (b) to (g). Pub. L. 99–646, §61(1), (3), redesignated former subsec. (a) as (b), inserted ", delay, or

fective pursuant to section 402(b) of Pub. L. 95–598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

1968—Pub. L. 90–296, § 2, Apr. 29, 1968, 82 Stat. 110, added item 1407.

## § 1390. Scope

(a) VENUE DEFINED.—As used in this chapter, the term "venue" refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general, and does not refer to any grant or restriction of subject-matter jurisdiction providing for a civil action to be adjudicated only by the district court for a particular district or districts.

(b) EXCLUSION OF CERTAIN CASES.—Except as otherwise provided by law, this chapter shall not govern the venue of a civil action in which the district court exercises the jurisdiction conferred by section 1333, except that such civil actions may be transferred between district courts as provided in this chapter.

(c) CLARIFICATION REGARDING CASES REMOVED FROM STATE COURTS.—This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts.

(Added Pub. L. 112–63, title II, § 201(a), Dec. 7, 2011, 125 Stat. 762.)

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE

Pub. L. 112–63, title II, § 205, Dec. 7, 2011, 125 Stat. 764, provided that: "The amendments made by this title [enacting this section, amending sections 1391 and 1404 of this title, and repealing section 1392 of this title]—

"(1) shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act [Dec. 7, 2011]; and

"(2) shall apply to—

"(A) any action that is commenced in a United States district court on or after such effective date; and

"(B) any action that is removed from a State court to a United States district court and that had been commenced, within the meaning of State law, on or after such effective date."

## § 1391. Venue generally

(a) APPLICABILITY OF SECTION.—Except as otherwise provided by law—

(1) this section shall govern the venue of all civil actions brought in district courts of the United States; and

(2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.

(b) VENUE IN GENERAL.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

(c) RESIDENCY.—For all venue purposes—

(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and

(3) a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

(d) RESIDENCY OF CORPORATIONS IN STATES WITH MULTIPLE DISTRICTS.—For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

(e) ACTIONS WHERE DEFENDANT IS OFFICER OR EMPLOYEE OF THE UNITED STATES.—

(1) IN GENERAL.—A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

(2) SERVICE.—The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

1986—Subsec. (f). Pub. L. 99–646 which directed that subsec. (f) be amended by substituting "chapter 224 of this title" for "title V of the Organized Crime Control Act of 1970 (18 U.S.C. note prec. 3481)" was executed by making the substitution for "title V of the Organized Crime Control Act of 1970) 18 U.S.C. note prec. 3481)" to reflect the probable intent of Congress.

### Statutory Notes and Related Subsidiaries

#### TRANSFER OF FUNCTIONS

For transfer of the functions, personnel, assets, and obligations of the United States Secret Service, including the functions of the Secretary of the Treasury relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see sections 381, 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under section 542 of Title 6.

#### REPORT TO CONGRESS

Pub. L. 98–473, title II, §1603, Oct. 12, 1984, 98 Stat. 2184, directed Attorney General to report to Congress annually, during first three years following Oct. 12, 1984, concerning prosecutions under this section.

### § 1030. Fraud and related activity in connection with computers

(a) Whoever—

(1) having knowingly accessed a computer without authorization or exceeding authorized access, and by means of such conduct having obtained information that has been determined by the United States Government pursuant to an Executive order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, or any restricted data, as defined in paragraph y. of section 11 of the Atomic Energy Act of 1954, with reason to believe that such information so obtained could be used to the injury of the United States, or to the advantage of any foreign nation willfully communicates, delivers, transmits, or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it;

(2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

(A) information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n)[1] of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.);

(B) information from any department or agency of the United States; or

(C) information from any protected computer;

(3) intentionally, without authorization to access any nonpublic computer of a department or agency of the United States, accesses such a computer of that department or agency

that is exclusively for the use of the Government of the United States or, in the case of a computer not exclusively for such use, is used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States;

(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

(5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.[2]

(6) knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if—

(A) such trafficking affects interstate or foreign commerce; or

(B) such computer is used by or for the Government of the United States;[3]

(7) with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any—

(A) threat to cause damage to a protected computer;

(B) threat to obtain information from a protected computer without authorization or in excess of authorization or to impair the confidentiality of information obtained from a protected computer without authorization or by exceeding authorized access; or

(C) demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion;

shall be punished as provided in subsection (c) of this section.

(b) Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

(c) The punishment for an offense under subsection (a) or (b) of this section is—

(1)(A) a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(1) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph; and

(B) a fine under this title or imprisonment for not more than twenty years, or both, in

[1] See References in Text note below.

[2] So in original. The period probably should be a semicolon.
[3] So in original. Probably should be followed by "or".

the case of an offense under subsection (a)(1) of this section which occurs after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(2)(A) except as provided in subparagraph (B), a fine under this title or imprisonment for not more than one year, or both, in the case of an offense under subsection (a)(2), (a)(3), or (a)(6) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(B) a fine under this title or imprisonment for not more than 5 years, or both, in the case of an offense under subsection (a)(2), or an attempt to commit an offense punishable under this subparagraph, if—

(i) the offense was committed for purposes of commercial advantage or private financial gain;

(ii) the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State; or

(iii) the value of the information obtained exceeds $5,000; and

(C) a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(2), (a)(3) or (a)(6) of this section which occurs after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(3)(A) a fine under this title or imprisonment for not more than five years, or both, in the case of an offense under subsection (a)(4) or (a)(7) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph; and

(B) a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(4),⁴ or (a)(7) of this section which occurs after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(4)(A) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 5 years, or both, in the case of—

(i) an offense under subsection (a)(5)(B), which does not occur after a conviction for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused)—

(I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person;

(IV) a threat to public health or safety;

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or

(VI) damage affecting 10 or more protected computers during any 1-year period; or

(ii) an attempt to commit an offense punishable under this subparagraph;

(B) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 10 years, or both, in the case of—

(i) an offense under subsection (a)(5)(A), which does not occur after a conviction for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused) a harm provided in subclauses (I) through (VI) of subparagraph (A)(i); or

(ii) an attempt to commit an offense punishable under this subparagraph;

(C) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 20 years, or both, in the case of—

(i) an offense or an attempt to commit an offense under subparagraphs (A) or (B) of subsection (a)(5) that occurs after a conviction for another offense under this section; or

(ii) an attempt to commit an offense punishable under this subparagraph;

(D) a fine under this title, imprisonment for not more than 10 years, or both, in the case of—

(i) an offense or an attempt to commit an offense under subsection (a)(5)(C) that occurs after a conviction for another offense under this section; or

(ii) an attempt to commit an offense punishable under this subparagraph;

(E) if the offender attempts to cause or knowingly or recklessly causes serious bodily injury from conduct in violation of subsection (a)(5)(A), a fine under this title, imprisonment for not more than 20 years, or both;

(F) if the offender attempts to cause or knowingly or recklessly causes death from conduct in violation of subsection (a)(5)(A), a fine under this title, imprisonment for any term of years or for life, or both; or

(G) a fine under this title, imprisonment for not more than 1 year, or both, for—

(i) any other offense under subsection (a)(5); or

(ii) an attempt to commit an offense punishable under this subparagraph.

(d)(1) The United States Secret Service shall, in addition to any other agency having such authority, have the authority to investigate offenses under this section.

(2) The Federal Bureau of Investigation shall have primary authority to investigate offenses under subsection (a)(1) for any cases involving

---

⁴So in original. The comma probably should not appear.

espionage, foreign counterintelligence, information protected against unauthorized disclosure for reasons of national defense or foreign relations, or Restricted Data (as that term is defined in section 11y of the Atomic Energy Act of 1954 (42 U.S.C. 2014(y)), except for offenses affecting the duties of the United States Secret Service pursuant to section 3056(a) of this title.

(3) Such authority shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury and the Attorney General.

(e) As used in this section—

(1) the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;

(2) the term "protected computer" means a computer—

(A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government;

(B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States; or

(C) that—

(i) is part of a voting system; and

(ii)(I) is used for the management, support, or administration of a Federal election; or

(II) has moved in or otherwise affects interstate or foreign commerce;

(3) the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession or territory of the United States;

(4) the term "financial institution" means—

(A) an institution, with deposits insured by the Federal Deposit Insurance Corporation;

(B) the Federal Reserve or a member of the Federal Reserve including any Federal Reserve Bank;

(C) a credit union with accounts insured by the National Credit Union Administration;

(D) a member of the Federal home loan bank system and any home loan bank;

(E) any institution of the Farm Credit System under the Farm Credit Act of 1971;

(F) a broker-dealer registered with the Securities and Exchange Commission pursuant to section 15 of the Securities Exchange Act of 1934;

(G) the Securities Investor Protection Corporation;

(H) a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978); and

(I) an organization operating under section 25 or section 25(a)[1] of the Federal Reserve Act;

(5) the term "financial record" means information derived from any record held by a financial institution pertaining to a customer's relationship with the financial institution;

(6) the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter;

(7) the term "department of the United States" means the legislative or judicial branch of the Government or one of the executive departments enumerated in section 101 of title 5;

(8) the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information;

(9) the term "government entity" includes the Government of the United States, any State or political subdivision of the United States, any foreign country, and any state, province, municipality, or other political subdivision of a foreign country;

(10) the term "conviction" shall include a conviction under the law of any State for a crime punishable by imprisonment for more than 1 year, an element of which is unauthorized access, or exceeding authorized access, to a computer;

(11) the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service;

(12) the term "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity;

(13) the term "Federal election" means any election (as defined in section 301(1) of the Federal Election Campaign Act of 1971 (52 U.S.C. 30101(1))) for Federal office (as defined in section 301(3) of the Federal Election Campaign Act of 1971 (52 U.S.C. 30101(3))); and

(14) the term "voting system" has the meaning given the term in section 301(b) of the Help America Vote Act of 2002 (52 U.S.C. 21081(b)).

(f) This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States.

(g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses[5] (I), (II), (III), (IV), or (V) of sub-

---

[5] So in original. Probably should be "subclause".

Subsec. (c)(2)(A). Pub. L. 99–474, §2(f)(3), (4), substituted "under this title" for "of not more than the greater of $5,000 or twice the value obtained or loss created by the offense" and inserted reference to subsec. (a)(6).

Subsec. (c)(2)(B). Pub. L. 99–474, §2(f)(3), (5)–(7), substituted "under this title" for "of not more than the greater of $10,000 or twice the value obtained or loss created by the offense", "not more than" for "not than", inserted reference to subsec. (a)(6), and substituted "; and" for the period at end of subpar. (B).

Subsec. (c)(3). Pub. L. 99–474, §2(f)(8), added par. (3).

Subsec. (e). Pub. L. 99–474, §2(g), substituted a dash for the comma after "As used in this section", realigned remaining portion of subsection, inserted "(1)" before "the term", substituted a semicolon for the period at the end, and added pars. (2) to (7).

Subsec. (f). Pub. L. 99–474, §2(h), added subsec. (f).

### Statutory Notes and Related Subsidiaries

#### Effective Date of 2002 Amendment

Amendment by Pub. L. 107–296 effective 60 days after Nov. 25, 2002, see section 4 of Pub. L. 107–296, set out as an Effective Date note under section 101 of Title 6, Domestic Security.

#### Transfer of Functions

For transfer of the functions, personnel, assets, and obligations of the United States Secret Service, including the functions of the Secretary of the Treasury relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see sections 381, 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under section 542 of Title 6.

#### Reports to Congress

Pub. L. 98–473, title II, §2103, Oct. 12, 1984, 98 Stat. 2192, directed Attorney General to report to Congress annually, during first three years following Oct. 12, 1984, concerning prosecutions under this section.

### § 1031. Major fraud against the United States

(a) Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent—

(1) to defraud the United States; or

(2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises,

in any grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, including through the Troubled Asset Relief Program, an economic stimulus, recovery or rescue plan provided by the Government, or the Government's purchase of any troubled asset as defined in the Emergency Economic Stabilization Act of 2008, or in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, if the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, is $1,000,000 or more shall, subject to the applicability of subsection (c) of this section, be fined not more than $1,000,000, or imprisoned not more than 10 years, or both.

(b) The fine imposed for an offense under this section may exceed the maximum otherwise provided by law, if such fine does not exceed $5,000,000 and—

(1) the gross loss to the Government or the gross gain to a defendant is $500,000 or greater; or

(2) the offense involves a conscious or reckless risk of serious personal injury.

(c) The maximum fine imposed upon a defendant for a prosecution including a prosecution with multiple counts under this section shall not exceed $10,000,000.

(d) Nothing in this section shall preclude a court from imposing any other sentences available under this title, including without limitation a fine up to twice the amount of the gross loss or gross gain involved in the offense pursuant to 18 U.S.C. section 3571(d).

(e) In determining the amount of the fine, the court shall consider the factors set forth in 18 U.S.C. sections 3553 and 3572, and the factors set forth in the guidelines and policy statements of the United States Sentencing Commission, including—

(1) the need to reflect the seriousness of the offense, including the harm or loss to the victim and the gain to the defendant;

(2) whether the defendant previously has been fined for a similar offense; and

(3) any other pertinent equitable considerations.

(f) A prosecution of an offense under this section may be commenced any time not later than 7 years after the offense is committed, plus any additional time otherwise allowed by law.

(g)(1) In special circumstances and in his or her sole discretion, the Attorney General is authorized to make payments from funds appropriated to the Department of Justice to persons who furnish information relating to a possible prosecution under this section. The amount of such payment shall not exceed $250,000. Upon application by the Attorney General, the court may order that the Department shall be reimbursed for a payment from a criminal fine imposed under this section.

(2) An individual is not eligible for such a payment if—

(A) that individual is an officer or employee of a Government agency who furnishes information or renders service in the performance of official duties;

(B) that individual failed to furnish the information to the individual's employer prior to furnishing it to law enforcement authorities, unless the court determines the individual has justifiable reasons for that failure;

(C) the furnished information is based upon public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or GAO report, hearing, audit or investigation, or from the news media unless the person is the original source of the information. For the purposes of this subsection, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government; or

(D) that individual participated in the violation of this section with respect to which such payment would be made.

bers, but they shall be reimbursed from the corporation for actual expenses incurred by them while in the performance of the functions vested in the board by this chapter.

**(d) Prohibitions against holding two or more offices inapplicable**

Any officer or employee of the United States, or of any corporation acting as a governmental agent of the United States, may, in addition to his present office, hold the office of director of the Textile Foundation without regard to any provision of law prohibiting the holding of more than one office.

**(e) Election of chairman**

The board at its first meeting and at each annual meeting thereafter shall elect a chairman.

**(f) Board to direct corporation**

The board shall direct the exercise of all the powers of the corporation.

(June 10, 1930, ch. 440, § 2, 46 Stat. 539.)

**§ 503. Purpose of Foundation**

**(a) Scientific and economic research**

The purposes of the corporation shall be to administer and expend its funds and other property for scientific and economic research for the benefit and development of the textile industry, its allied branches, and including that of production of raw materials.

**(b) Payment by Textile Alliance, Incorporated**

The Textile Alliance, Incorporated, is authorized to pay to the corporation the amounts payable in accordance with the arrangement between the Textile Alliance, Incorporated, and the Department of State, in lieu of paying such amounts into the United States Treasury; except that any amounts payable in accordance with such arrangement, and paid into the United States Treasury before June 10, 1930, are authorized to be appropriated to the credit of the corporation. Upon the receipt by the corporation of such amounts the liability of the Textile Alliance, Incorporated, under such arrangement shall be extinguished.

(June 10, 1930, ch. 440, § 3, 46 Stat. 539.)

**§ 504. Powers of Foundation**

The corporation—

(a) Shall have perpetual succession;

(b) May sue and be sued;

(c) May adopt a corporate seal and alter it at pleasure;

(d) May adopt and alter bylaws;

(e) May appoint officers and agents;

(f) May acquire by purchase, devise, bequest, gift, or otherwise, and hold, encumber, convey, or otherwise dispose of, such real and personal property as may be necessary or appropriate for its corporate purposes;

(g) May invest and reinvest the principal and interest of its funds; and

(h) Generally, may do any and all lawful acts necessary or appropriate to carry out the purposes for which the corporation is created.

(June 10, 1930, ch. 440, § 4, 46 Stat. 540.)

**§ 505. Report to Congress**

The corporation shall, on or before the 1st day of December in each year, transmit to Congress and to the President a report of its proceedings and activities for the preceding calendar year, including a detailed statement of its receipts and expenditures. Such reports shall not be printed as public documents.

(June 10, 1930, ch. 440, § 5, 46 Stat. 540.)

**§ 506. Amendment and repeal of chapter**

The right to alter, amend, or repeal this chapter is expressly reserved.

(June 10, 1930, ch. 440, § 6, 46 Stat. 540.)

## CHAPTER 13A—FISHING INDUSTRY

| Sec. | |
|---|---|
| 521. | Fishing industry; associations authorized; "aquatic products" defined; marketing agencies; requirements. |
| 522. | Monopolies or restraints of trade; service of complaint by Secretary of Commerce; hearing; order to cease and desist; jurisdiction of district court. |

**§ 521. Fishing industry; associations authorized; "aquatic products" defined; marketing agencies; requirements**

Persons engaged in the fishery industry, as fishermen, catching, collecting, or cultivating aquatic products, or as planters of aquatic products on public or private beds, may act together in associations, corporate or otherwise, with or without capital stock, in collectively catching, producing, preparing for market, processing, handling, and marketing in interstate and foreign commerce, such products of said persons so engaged.

The term "aquatic products" includes all commercial products of aquatic life in both fresh and salt water, as carried on in the several States, the District of Columbia, the several Territories of the United States, the insular possessions, or other places under the jurisdiction of the United States.

Such associations may have marketing agencies in common, and such associations and their members may make the necessary contracts and agreements to effect such purposes: *Provided, however*, That such associations are operated for the mutual benefit of the members thereof, and conform to one or both of the following requirements:

First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein; or

Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

and in any case to the following:

Third. That the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members.

(June 25, 1934, ch. 742, § 1, 48 Stat. 1213.)

**§ 522. Monopolies or restraints of trade; service of complaint by Secretary of Commerce; hearing; order to cease and desist; jurisdiction of district court**

If the Secretary of Commerce shall have reason to believe that any such association monop-